UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

CRUM & FORSTER SPECIALTY
INSURANCE COMPANY,

    Plaintiff,

 v.              Case No. 16-C-1619

GHD INC. n/k/a DVO INC.,

    Defendant.

## DECISION AND ORDER

  Plaintiff Crum & Forster Specialty Insurance Company brought this diversity action for declaratory relief against Defendant GHD Inc., now known as DVO Inc., seeking a determination that Crum & Forster has no duty to defend DVO under the Errors and Omissions (E&O) coverage of the primary and excess insurance policies (collectively, the Policy) it issued to DVO in an underlying lawsuit. Crum & Forster is a Delaware corporation with its principal place of business in New Jersey. ECF No. 2 at 1; 19-4 at 1. DVO is a Wisconsin corporation with its principal place of business in Chilton, Wisconsin. ECF No. 1 ¶ 3. The amount in controversy exceeds $75,000. Presently before the court is Crum & Forster's motion for summary judgment. For the reasons set forth below, the motion will be granted.

## I. BACKGROUND

**A. Underlying Lawsuit**

  DVO is engaged in the business of designing and building anaerobic digesters, which use microorganisms to break down biodegradable material in the absence of oxygen to create biogas.

ECF No. 19-1 ¶ 2, Ex. A. In August 2013, WTE-S&S AG Enterprises, LLC filed a complaint against DVO in the Circuit Court for Door County, Wisconsin. *WTE-S&S AG Enters., LLC v. GHD, Inc. n/k/a DVO, Inc.*, No. 13CV166. In this underlying action, WTE alleged that it entered into a Standard Form of Agreement created by the Engineers Joint Contract Documents Committee for the construction of an anaerobic digester in Sturgeon Bay, Wisconsin, which was to generate electricity from cow manure. The electricity generated by the converter would then be sold to the electric power utility. *Id.*; Pl.'s Proposed Findings of Fact (PPFOF), ECF No. 18 at ¶ 2. WTE asserted a single cause of action in its lawsuit against DVO: breach of contract. *Id*. at ¶ 4. It claimed DVO failed to fulfill its design duties, responsibilities and obligations under the contract because it did not properly design substantial portions of the structural, mechanical and operational systems of the anaerobic digester, which caused substantial damages to WTE.

On October 2, 2013, Crum & Forster provided a defense to DVO under a reservation of rights. *Id*. at ¶ 10. On December 21, 2015, Crum & Forster advised DVO that it would no longer provide a defense to DVO, effective December 31, 2015. Def.'s Proposed Finding of Fact (DPFOF), ECF No. 22, at ¶¶ 1–2. WTE later filed for bankruptcy and the case was transferred to the United States Bankruptcy Court for the Northern District of Illinois. ECF No. 18 ¶¶ 11–12. On August 18, 2017, following an eight-day trial, the Bankruptcy Court found in favor of WTE and ordered DVO to pay over $65,000 in damages. The Court later added attorneys fees and costs in the amount of $198,000. ECF No. 22, ¶¶ 5–7.

**B. Insurance**

Crum & Forster issued primary and excess insurance policies to DVO for the following policy periods: June 1, 2011 to April 1, 2012; April 1, 2012 to April 1, 2013; and April 1, 2013 to

2

April 1, 2014. PPFOF, ECF No. 18, at ¶ 13. The primary policies contained various coverages, including commercial general liability (CGL) coverage, contractors pollution liability coverage, E&O coverage, third party pollution coverage, and onsite cleanup pollution liability coverage. *Id*. at ¶ 15; *see also* Policy Exh. C., D. and E, ECF Nos. 19-3, 19-4, 19-5.

In the E&O liability coverage part of the Policy, Crum & Forster agreed to pay, in excess of the deductible amount, "those sums the insured becomes legally obligated to pay as 'damages' or 'cleanup costs' because of a 'wrongful act' to which this insurance applies." ECF No. 19-3 at 48. The term "wrongful act" was defined as: "an act, error or omission in the rendering or failure to render 'professional services' by any insured." *Id*. at 31. "Professional services" were defined as "those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager." *Id*. at 30. The Policy also provided that Crum & Forster had the "right and duty to defend the insured against any 'suit' seeking 'damages' to which this insurance applies." *Id.* at 4.

The Policy also contained numerous exclusions of coverage. The exclusion at issue in this case is the breach of contract exclusion that was added by an endorsement. As amended by the endorsement, the contractual liability exclusion reads:

> This Policy does not apply to 'damages', 'defense expenses', 'cleanup costs', or any loss, cost or expense, or any 'claim' or 'suit':
>
> Based upon or arising out of:
>
> a.   breach of contract, whether express or oral, nor any "claim" for breach of an implied in law or an implied in fact contracts, regardless of whether "bodily injury", "property damage", "personal and advertising injury" or a "wrongful act" is alleged.

3

*Id*. at 12, 70.

Crum & Forster filed this complaint on December 7, 2016, seeking a declaration that it did not have a duty to defend DVO in WTE's lawsuit against it or indemnify DVO for any damages awarded therein. In its motion for summary judgment, Crum & Forster argues that any coverage provided under the Policy is eliminated by the breach of contract exclusion. DVO argues that the breach of contract provision effectively eliminates all possible coverage under the E&O policy and thereby renders the E&O coverage illusory. Because illusory coverage is contrary to Wisconsin public policy, DVO argues the court should reform the contract and remove the breach of contract exclusion.

## II. LEGAL STANDARD

Summary judgment is appropriate when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). All reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotations omitted).

4

## III. ANALYSIS

Because the court is sitting in diversity jurisdiction, pursuant to 28 U.S.C. § 1332, the court applies Wisconsin substantive law to determine Crum & Forster's duty to defend. *Wachovia Sec., LLC v. Banco Panamericano, Inc.*, 674 F.3d 743, 751 (7th Cir. 2012) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). "An insurer's duty to defend the insured in a third-party suit is predicated on allegations in a complaint which, if proven, would give rise to the possibility of recovery that falls under the terms and conditions of the insurance policy." *Fireman's Fund Ins. Co. of Wis. v. Bradley Corp.*, 2003 WI 33, ¶ 19, 261 Wis. 2d 4, 660 N.W.2d 666 (quoting *Sch. Dist. of Shorewood v. Wausau Ins. Co.*, 170 Wis. 2d 347, 364, 488 N.W.2d 82 (1992)). Wisconsin applies a "four-corners rule" when determining whether an insurer has a duty to defend or has breached such a duty. *Marks v. Houston Cas. Co.*, 2016 WI 53, ¶ 39, 369 Wis. 2d 547, 881 N.W.2d 309 (citing *Olson v. Farrar*, 2012 WI 3, ¶ 33, 338 Wis. 2d 215, 809 N.W.2d 1). The rule derives its name from its application because the "'duty to defend is triggered by the allegations contained within the four corners of the complaint' against the insurer." *Id*. (quoting *Estate of Sustache v. Am. Family Mut. Ins. Co.*, 2008 WI 87, ¶ 20, 311 Wis. 2d 548, 751 N.W.2d 845). Accordingly, the "only two documents [that] are germane in any four-corners analysis [are] the insurance policy and the complaint against the insured." *Id*. Moreover, the analysis focuses on the allegations of the complaint, because "[i]t is the nature of the alleged claim that is controlling . . . ." *Id*. at ¶ 40 (citing *Estate of Sustache*, 2008 WI 81, at ¶ 20). Additionally, while determining whether a party has a duty to defend, the court will liberally construe the allegations in the complaint and assume all reasonable inferences, and any ambiguity in the coverage terms will be construed against the insurer. *Id*.

5

In determining whether there is a duty to defend, a court must first consider whether the insuring agreement makes an initial grant of coverage. *Id*. (citations omitted). If the court finds that an initial grant coverage exists for the claim, then it will examine the policy's exclusions to determine whether they preclude coverage. *Id*. If a policy exclusion is determined to apply, then the court will examine whether any exceptions to the exclusion would apply, and thus, return coverage. *Id*.

Here, the parties agree that WTE's complaint triggers initial coverage under the policies. Under the terms of the policy, Crum & Forster has a duty to defend and indemnify damages from "an act, error or omission in the rendering or failure to render" "those functions performed for others by you or by others on your behalf that are related to your practice as a consultant, engineer, architect, surveyor, laboratory or construction manager." WTE's complaint alleges that DVO is liable for damages caused by DVO's failure to "fulfill its design duties, responsibilities and obligations" in creating the anaerobic digester. Designing and constructing the anaerobic digester are functions that fall within the definition of "professional services" because DVO is an environmental engineering firm. Furthermore, DVO's alleged failure to meet design requirements meets the definition of a "wrongful act." It thus follows that WTE's lawsuit falls within the initial grant of coverage.

The parties also agree that coverage is excluded under the breach of contract exclusion of the policy. In determining whether the exclusion applies, the focus is on the incident that allegedly gave rise to the coverage, not the theory of liability. *1325 N. Van Buren, LLC v. T-3 Group, Ltd.*, 2006 WI 94, ¶¶ 52, 58, 293 Wis. 2d 410, 716 N.W.2d 822 (citing *Bankert v. Threshermen's Mut. Ins. Co.*, 110 Wis. 2d 469, 480, 329 N.W.2d 150 (1983)). WTE's complaint alleges that DVO was contracted to design, build and construct an anaerobic digester, and because of DVO's faulty design,

6

WTE has incurred significant damages. ECF No. 19-1 at 5–6. The complaint thus asserts a claim for breach of the contract between DVO and WTE.

The central dispute between the parties is whether the breach of contract exclusion renders coverage under the E&O policy illusory. Coverage under an insurance policy is illusory when the "policy language defines coverage in a manner that coverage will never actually be triggered." *Marks*, 2016 WI 53, at ¶ 56 (citing *Cont'l W. Ins. Co. v. Paul Reid, LLP*, 2006 WI App 89, ¶ 7, 292 Wis. 2d 674, 715 N.W.2d 689). Coverage is illusory only when a court "cannot foresee liability in any imaginable set of circumstances." *Baumann v. Elliott*, 2005 WI App 186, ¶ 20, 286 Wis. 2d 667, 704 N.W.2d 361 (2005) (citing *Link v. Gen. Cas. Co. of Wis.*, 185 Wis. 2d 394, 400, 518 N.W.2d 261 (Ct. App. 1994)). When a policy's purported coverage is illusory, the policy may be reformed to meet an insured's reasonable expectations of coverage; however, reformation is an extraordinary remedy and should be exercised with great caution and restraint. *Marks,* 2016 WI 53, at ¶ 56 (citations omitted).

DVO contends that the language of the breach of contract exclusion renders the exclusion broader than the grant of coverage and, therefore, renders the coverage illusory. The breach of contract exclusion includes the phrase "arising out of," which Wisconsin courts have explained is "very broad, general, and comprehensive; and [is] ordinarily understood to mean originating from, growing out of, or flowing from." *Garriguenc v. Love*, 67 Wis. 2d 130,137, 226 N.W.2d 414 (1975). "All that is necessary is some causal relationship between the injury and the event not covered." *Id*. DVO notes that the Wisconsin Supreme Court has explained that every contract contains a common-law duty to perform the contract with care, skill, reasonable expedience and faithfulness. ECF No. 20 at 10 (citing *Colton v. Foulkes*, 259 Wis. 142, 47 N.W.2d 901 (1951)).

7

Every failure to perform a professional contract with care, skill, reasonable expedience and faithfulness is a professional error or omission. It thus follows, DVO argues, that there are no acts, errors or omissions that could occur while rendering professional services designing and building an anaerobic digester that would not "arise out of" a breach of DVO's contract with WTE. For this reason, DVO concludes that it could never be covered for its errors and omissions and the E&O coverage it purchased is therefore illusory.

Crum & Forster argues that DVO reads the policy agreement too narrowly and the exclusion too broadly. It notes that the E&O policy also includes coverage for "clean up" costs that may arise out of DVO's professional services and would not be excluded under the breach of contract exclusion. Additionally, Crum & Forster argues that the policy must be read as a whole, including the other coverages, such as CGL, third party pollution liability and contractors pollution liability. Because coverage can be envisioned, Crum & Forster argues the coverage is not illusory.

DVO's reading of the exclusion and its assertion that no wrongful act in the rendering of professional services giving rise to liability could occur without there being a breach of contract, either express or implied, is too broad. DVO's argument is predicated upon the Wisconsin Supreme Court's explanation that "[a]ccompanying every contract is a common-law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done, and a negligent failure to observe any of these condition is a tort, as well as a breach of the contract." *Colton*, 259 Wis. at 146. In *Colton,* the Court was addressing a personal injury claim by a plaintiff who, like WTE here, had entered a contract with the defendant. *Id*. at 144–45. In *Colton*, the plaintiff hired defendant corporation to make repairs to the roof and porch railing on his residence. *Id*. at 144. The plaintiff alleged that the defendant's employees negligently repaired a railing, and when he later

8

leaned against it, the railing broke causing the plaintiff to fall to the ground and sustain serious injuries. *Id.* The plaintiff sued the corporation, and the officers and employees who had actually done the work, for negligence. The defendants sought dismissal of the plaintiff's claim for negligence on the ground that his only lawful claim was for breach of contract against the defendant corporation. *Id*. at 145. The court held that the fact that the duty to repair the railing arose by contract did not mean the defendants could not be liable in negligence for failing to use due care in performing their work. *Id*. at 146. In essence, *Colton* held that as between the parties to a contract, a claim that the defendant had failed to use due care in performing his duties under the contract with the plaintiff could be both a breach of contract or in tort. *Id.* But that does not mean that every claim for injury or property damage against a party to a contract is based upon or arises out of a contract.

As a contractor, designer, engineer and builder, DVO owes a duty to more than just WTE. DVO also has a duty to use reasonable care in carrying out its contractual obligations so as to avoid injury or damage to the person or property of third parties, even though they have no contractual relation with DVO. *See A.E. Inv. Corp. v. Link Builders, Inc.*, 62 Wis. 2d 479, 487–89, 214 N.W.2d 764 (1974) (citations omitted) (holding that an architect has a duty to third parties with whom they are not in privity of contract). This duty remains even after completion of the work and acceptance by the purchaser, and regardless of whether DVO was in privity of contract with said third party. *Id*. Likewise, "'everyone owes to the world at large the duty of refraining from those acts that may unreasonably threaten the safety of others.'" *Brenner v. Amerisure Mut. Ins. Co.*, 2017 WI 38, ¶ 17, 374 Wis. 2d 578, 893 N.W.2d (citing *Behrendt v. Gulf Underwriters Ins. Co.*, 2009 WI 71, ¶ 17 318 Wis. 2d 622, 768 N.W.2d 568)). Third parties who sustained personal injuries or

9

property damage as a result of DVO's errors or omissions in its design and construction of an anaerobic digester for WTE would therefore have claims against DVO that would not be based upon or arise out of DVO's contract with WTE. Such claims would be based upon and arise out DVO's negligent errors or omissions. The manifest intent of the breach of contract exclusion is to avoid making Crum & Forster a guarantor of DVO's contractual obligations. Crum & Forster agreed to insure DVO against liability it incurred to third parties for its negligent error or omissions; it chose not to insure DVO for liability it incurred to its own customers for failing to meet its contractual obligations.

The Wisconsin Court of Appeals reached this result under similar circumstances in *General Casualty Company of Wisconsin v. Rainbow Insulators, Inc.*, 2011 WI App 58, 332 Wis. 2d 804, 798 N.W. 2d 320 (unpublished). At issue in that case was coverage under a contractor's E&O policy for a claim arising out of the insured's failure to perform a contract. The insured contractor was hired to install metal studs and drywall in a condominium project and was sued by the owner for loss of use and cost of repair due to its defective performance. *Id*. at ¶¶ 1–4. The court construed the "contract" exclusion of the policy, which excluded coverage "for damages arising out of any . . . [d]elay or failure by [the insured] or anyone acting on [the insured's] behalf to perform a contract or agreement in accordance with its terms," *id.* at ¶ 34, so as to apply. In reaching this result, the court rejected the insured's argument that such a construction was absurd "because it would render the E&O policy meaningless, in that every time an insured enters into a contract, it would lose coverage for any negligent acts, errors or omissions in work performed under the contract." *Id.* ¶ 41. The court noted that although the owner's allegations in that case fit the contract exclusion, coverage was not defeated in all other scenarios. *Id*. As an example of a

scenario in which the contract exclusion would not apply, the court noted that "because contractors owe common law duties of care to those with whom they contract, as to all other persons, the 'contract' exclusion would not operate to preclude E&O policy coverage arising from a tort claim that involves conduct that is not a delay or failure to perform under a contract term." *Id.*

Even if one accepts DVO's argument that the phrase "arising out of," as construed by Wisconsin courts, is so broad that even injuries and harm to third parties who sue in tort would be covered by the exclusion, this does not mean the exclusion would be eliminated entirely. As noted above, where a policy's purported coverage is illusory, the policy may be reformed to meet an insured's reasonable expectations of coverage. *Marks*, 369 Wis. 2d at ¶ 56. But reforming a policy doesn't mean eliminating an exclusion in its entirety. To repeat, "reformation is an extraordinary remedy, and . . . courts exercise it with great caution and restraint." *Id.* (internal quotations omitted). As the Wisconsin Supreme Court explained in *Marks*, "[i]f a clause in Marks' policy renders the policy illusory, we consider whether to reform that clause. We do not consider whether to reform other clauses, simply because they too eliminate coverage." *Id.* at ¶ 59.

Likewise in this case, even if DVO is correct that the breach of contract exclusion renders the E&O coverage illusory because it applies not only to claims based upon a breach of contract, but also claims by third parties arising out of a breach of contract, it does not follow that the entire exclusion would be eliminated. Instead, the clause would be reformed to meet the insured's reasonable expectations of coverage. In this case, a reasonable insured would believe, based on the plain language of the exclusion, that liability for breach of contract would be excluded, but not liability to third parties who were not parties to the contract. Reforming the policy to so read, however, would not help DVO since DVO's entire liability in the underlying lawsuit was for breach

11

of its contract with WTE and not to any third parties. In other words, even if reformation were granted, DVO would still be without coverage. It thus follows that Crum & Forster had no duty to defend or indemnify DVO.

## CONCLUSION

In sum, the E&O policy is not illusory and any coverage provide by the E&O coverage of the policy is excluded by the breach of contract exclusion. Alternatively, even if it is illusory, reformation would not provide coverage. It thus follows that Crum & Forster has no duty to defend DVO in the WTE lawsuit or indemnify DVO for its liability arising out of that suit. Crum & Forster's motion for summary judgment (ECF No. 16) is therefore **GRANTED**. The Clerk is directed to enter judgment in favor of Crum & Forster containing the following declaration: The policies of insurance issued by Plaintiff Crum & Forster to GHD, Inc., n/k/a DVO, Inc., between June 2011 and April 2014 do not provide coverage for the liability DVO incurred in the lawsuit filed by WTE–S&S AG Enterprises, LLC., Door County Case No. 13-CV-166.

**SO ORDERED.**

Dated this __5th__ day of July, 2018.

s/ William C. Griesbach<br>
William C. Griesbach, Chief Judge<br>
United States District Court